Haskell v. HOLEMAN, Plaintiff,

v.

**William C. NEILS, and George S. Wright, Defendants.**

**No. CIV 90–0832 PHX CAM.**

United States District Court,
D. Arizona.

May 8, 1992.

Lee A. Henderson, Steven T. Hetland, Hessian, McKasy & Soderberg, Minneapolis, Minn., David W. Dow, Mohr, Hackett, Pederson, Blakley, Randolph & Haga, P.C., Phoenix, Ariz., for plaintiff.

Michael B. Scott, Crowe & Scott, P.A., Phoenix, Ariz., for defendant William C. Neils.

Kevin D. Ray, Lieurance, Wright & Ray, P.C., Phoenix, Ariz., for defendant George S. Wright.

ORDER

MUECKE, District Judge.

Having considered the parties' motions for summary judgment, the Court concludes as follows:

*Background*

Plaintiff has filed a twelve count complaint arising out of a real estate investment entered into by plaintiff and the two defendants for real property in Tucson, Arizona. Plaintiff seeks to recover his investment in the real property. Plaintiff has filed a motion for partial summary judgment on counts two, three, five, six and eleven and defendants have filed motions for summary judgment.

The following facts regarding the investment are undisputed:[1] On or about July 20, 1985, William E. Ruff and associates entered into a purchase agreement for the property that is the subject of this law suit with Title Insurance Company of Minnesota (TICOM) for the sum of $995,000. DSOF 1. At the same time, William E. Ruff and associates entered into an agreement to assign the purchase contract to Merit Homes, Inc. and Canyon Properties, Inc. for the sum of $50,000. DSOF 2. Annual payments on the property were to be in the amount of $100,000 per year plus accrued interest. DSOF 3.

On or about October 1, 1985, Defendant Wright made a down payment in the amount of $185,000 to TICOM and Canyon and Merit executed a warranty deed to convey the property to defendant Wright. DSOF 4–5; PSOF 6–7. The deed was recorded in Pima County. DSOF 6. At that time, Canyon and Merit Homes, Inc. had formed a joint venture, known as the Kino Boulevard Joint Venture, to purchase real estate for commercial development. PSOF 2–3; DSOF 7. Defendant Wright had a purchase option agreement with Kino that gave the joint venture the exclusive right

---

[1]. The parties filed almost simultaneous motions for summary judgment in this case. Therefore, PSOF refers to the uncontested facts set forth by plaintiff and defendants in plaintiff's motion for partial summary judgment. DSOF refers to the undisputed facts set forth by both plaintiff and defendants in defendants' motion for summary judgment.

to sell the property and obligation to make all the payments owed against the real estate. DSOF 7–9; PSOF 9–10. The purchase option agreement terminated in October of 1986 when Kino failed to make the first payment. DSOF 7–9; PSOF 12, 16, 17. At that time, the property was placed in foreclosure and a trustee's sale set for January of 1987. PSOF 18.

In October or November of 1986, defendant Neils acquired a financial interest in the real estate by writing a check in the amount of $92,500 to defendant Wright. DSOF 11; PSOF 13.

In December of 1986, defendant Neils advised plaintiff of his recent involvement in the transaction and plaintiff requested more information regarding the property. DSOF 13. On or about December 19, 1986, plaintiff and defendants met at defendant Wright's office. DSOF 14; PSOF 19. At that meeting, plaintiff was advised that he could acquire a one-third ownership interest in the property for the sum of $230,000 and that this sum would be used to pay the arrearages due on the deed of trust, outstanding taxes, attorney fees and costs of any foreclosure sale. DSOF 16. At that time, an agreement was prepared and executed by the parties. DSOF 17; PSOF 20. The agreement provides in its entirety:

> WHEREAS the parties have agreed to enter into a relationship concerning certain real property located in Pima County, Arizona. Pursuant to said relationship, W.C. Neils and George S. Wright have invested the sum of $306,000.00 and H.V. Holeman has invested the sum of $230,000.00.
>
> The parties hereto agree that upon the sale of the subject property, W.C. Neils, George S. Wright and H.V. Holeman shall be repaid all contributions made for said property and thereafter, each of the parties shall share in the net proceeds of said sale on a one-third basis each.

Pursuant to the agreement, Defendant Wright quit claimed one-third of his interest in the property to plaintiff and one-third of his interest in the property to defendant Neils and paid the arrearages on the property terminating foreclosure proceedings. DSOF 19–20.

On October 1, 1987, the property had not been sold and the principal payment and interest was due on the property. DSOF 21–22. At that time, plaintiff and defendants contributed from $63,000 to $68,000 each to make the payments due on the property. DSOF 23; PSOF 26.

On October 1, 1988, the property still had not sold. DSOF 24. Defendant Wright obtained a year extension on the note in return for an interest payment in the amount of $78,600, which was paid equally by the plaintiff and defendant Neils. DSOF 24; PSOF 27.

In November of 1988, two acres of the property were released from the deed of trust. DSOF 24.

In September of 1989, the plaintiff concluded that defendants had a base investment in the property of $185,000 rather than $306,250. DSOF 26. Defendant Wright provided documents to plaintiff regarding the property in November of 1989. DSOF 27. Defendant Wright alleges that these documents were an accounting. *Id.*

On January 22, 1990, the property, except for the two acres that had previously been released, was sold at a trustee's sale. DSOF 28. The remaining two acres is owned by plaintiff and defendants in equal one-third shares.

### Summary Judgment

Summary judgment may be granted if the movant shows that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(c), Federal Rules of Civil Procedure.

The disputed fact(s) must be material. *Id.* Substantive law determines which facts are material. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

The dispute must also be genuine. A dispute about a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Liberty Lobby*, 477 U.S. at 249, 106 S.Ct. at 2510. There is no issue for trial unless there is sufficient evidence favoring the nonmoving party. If the evidence is merely colorable or is not significantly probative, summary judgment may be granted. *Liberty Lobby*, 477 U.S. at 249–50, 106 S.Ct. at 2510–11. In a civil case, the question is:

> whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented. The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Liberty Lobby*, 477 U.S. at 252, 106 S.Ct. at 2512.

■ The moving party who has the burden of proof on the issue at trial must establish all of the essential elements of the claim or defense for the court to find that the moving party is entitled to judgment as a matter of law. *Fontenot v. Upjohn*, 780 F.2d 1190, 1194 (5th Cir.1986); *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir.1986). However, the moving party need not disprove matters on which the opponent has the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Thus, summary judgment is proper if the nonmoving party fails to make a showing sufficient to establish the existence of an essential element of his case on which he will bear the burden of proof at trial. *Id.*

I. IS SUMMARY JUDGMENT PROPER FOR THE DEFENDANTS ON THE BREACH OF PARTNERSHIP AGREEMENT AND FIDUCIARY DUTY CLAIMS, COUNTS ONE, TWO, THREE, FOUR, FIVE, EIGHT AND NINE BECAUSE A PARTNERSHIP WAS NEVER FORMED BY THE PARTIES?

Defendants argue that plaintiff cannot prevail on the following claims because plaintiff cannot establish that a partnership was ever created by the parties. Count one alleges that the defendants breached the partnership agreement. In Count two, plaintiff alleges that the partnership agreement is voidable for failure of consideration. Count three alleges that there was not a mutual agreement with respect to the fundamental elements of the partnership agreement. Count four alleges, in the alternative, that the agreement should be reformed to add conditional terms. In count five, plaintiff alleges fraud in the formation of the partnership. Count eight alleges breach of fiduciary duty pursuant to A.R.S. § 29–221, the Arizona Uniform Partnership Act. Count nine requests an accounting of the partnership assets pursuant to A.R.S. § 29–222, the Arizona Uniform Partnership Act.

■ The facts, circumstances and intention of the parties control whether a partnership exists. *Myrland v. Myrland*, 19 Ariz.App. 498, 502, 508 P.2d 757 (App. 1973). Mere shared ownership in property or profits from the property does not create a partnership. A.R.S. § 29–207(2), (3) (1989). Participation in profits alone does not constitute a partnership absent intention, co-ownership of a business, community of interest and community in power of administration. *Myrland*, 19 Ariz.App. at 502, 508 P.2d at 760.

■ The undisputed facts establish that the parties signed a document entitled "Agreement" which set forth the amounts invested by the parties in the property in Tucson, Arizona and provided that upon the sale of the property they would be repaid their investments and share in the net proceeds of the sale on a one-third basis each. Defendant Wright states in his affidavit that no partnership was contemplated by the parties. Defendant Neils similarly stated in his deposition that the parties did not discuss a partnership when they entered into the venture. Plaintiff admits that a partnership was never discussed and he assumed that a partnership existed. At most, the parties agreed to invest money and share in the proceeds of

the sale. As such, no partnership was created. *Myrland,* 19 Ariz.App. at 502, 508 P.2d at 760.

Plaintiff argues that the existence of a partnership verses a joint venture is legally irrelevant to the facts of this case as a fiduciary duty exists in a joint venture. However, the cases cited by plaintiff do not support this statement. Neither case addresses the issue of whether a fiduciary duty is owed in a joint venture. *See Estate of Kirschenbaum v. Kirschenbaum,* 164 Ariz. 435, 793 P.2d 1102 (App.1989); *Lightning "A" Ranch Venture v. Tankersley,* 161 Ariz. 497, 779 P.2d 812 (App.1989).

Because no partnership existed, summary judgment is proper for the defendants on count eight (breach of fiduciary duty pursuant to A.R.S. § 29–221, the Arizona Uniform Partnership Act) and count nine (accounting of the partnership assets pursuant to A.R.S. § 29–222, the Arizona Uniform Partnership Act). However, whether the agreement is labeled a partnership or joint venture agreement, the agreement is a contract that can be breached, rescinded, reformed or fail for lack of consideration or because of fraud in the formation of the agreement. Therefore, summary judgment is not proper for the defendants on counts one (breach of contract), two (failure of consideration), three (rescission), four (reformation), or five (fraud in the formation of the partnership agreement) merely because a partnership did not exist.

## II. ARE PLAINTIFF OR DEFENDANTS ENTITLED TO SUMMARY JUDGMENT ON COUNT SIX—THE CONSUMER FRAUD CLAIM?

Plaintiff argues that he is entitled to summary judgment on his consumer fraud claim because the uncontested facts establish the elements of a private cause of action under the Consumer Fraud Act.

The Arizona Consumer Fraud Act is a broad act intended to eliminate unlawful practices in merchant-consumer transactions. *State ex rel. Corbin v. Hovatter,* 144 Ariz. 430, 431, 698 P.2d 225, 226 (App.

1985). The Act defines unlawful practice as:

> The act, use, or employment by any person of any deception, deceptive act or practice, fraud, false pretense, false promise, misrepresentation, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise whether or not any person has in fact been mislead, deceived, or damaged thereby . . .

A.R.S. § 44–1522(A) (1987). The Act further provides that it be construed consistent with the Federal Trade Commission Act, 15 U.S.C.A. §§ 44, 52 and 55(a)(1) (false advertising provisions). A.R.S. § 44–1522(B) (1987).

The Consumer Fraud Act provides an injured consumer with an implied private right of action against the violator of the act. *Dunlap v. Jimmy GMC of Tucson, Inc.,* 136 Ariz. 338, 342, 666 P.2d 83, 87 (App.1983). The elements of the private cause of action are a false promise or misrepresentation made in connection with the sale or advertisement of merchandise and the hearer's consequent and proximate injury. *Id.* Damage or injury occurs when the consumer relies on the misrepresentation even though the reliance is not reasonable. *Correa v. Pecos Valley Dev. Corp.,* 126 Ariz. 601, 605, 617 P.2d 767, 771 (App.1980); *Peery v. Hansen,* 120 Ariz. 266, 270, 585 P.2d 574, 578 (App.1978). Plaintiff has the burden of proving these elements by a preponderance of the evidence. *Dunlap,* 136 Ariz. at 342, 666 P.2d at 89.

A private individual's relief under the Consumer Protection Act is his actual damages suffered as a result of the unlawful act or practice. *Dunlap,* 136 Ariz. at 342, 666 P.2d at 87; *Peery v. Hansen,* 120 Ariz. at 270, 585 P.2d at 578. These damages include the consideration paid in the contract and out-of-pocket expenses. *Parks v. Macro–Dynamics, Inc.,* 121 Ariz. 517, 521, 591 P.2d 1005, 1009 (App.1979). Punitive damages are allowed for violations of the Consumer Fraud Act where the wrongdoer's conduct is wanton

or reckless, shows spite or ill will or where the conduct demonstrates a reckless indifference to the interests of others. *Dunlap*, 136 Ariz. at 342–43, 666 P.2d at 87–88.

Plaintiff argues that the uncontested facts show that defendants made a false representation that they invested $306,250 in the real estate in exchange for plaintiffs' investment of $230,000 that would prevent foreclosure and that plaintiff was injured by the loss of investment when the property was foreclosed on in January of 1990. Defendants admit they had not invested this amount of money in the property. Defendants argue that this $306,250 figure was their total return on the sale rather than the amount invested. PSOF 20, 22. This statement appears to be partially accurate because the agreement goes on to provide that defendants will be repaid their contributions and share one-third each in the remaining proceeds from the sale of the property. However, the clear language of the agreement states that "W.C. Neils and George S. Wright have invested the sum of $306,250." The similar statement that plaintiff "has invested the sum $230,-000" meant that plaintiff paid $230,000 for his one-third interest in the property. DSOF 16. Therefore, the undisputed facts establish a written misrepresentation by defendants made in connection with the sale of a one-third interest in the land to plaintiff.

However, a genuine issue of material fact exists as to whether plaintiff relied on the misrepresentation. Plaintiff states that he relied on the misrepresentation in making his investment. PSOF 24. Defendants argue that plaintiff did not rely because, as plaintiff admitted in his deposition, he invested in the property to hide his assets from creditors. Because an issue of fact exists as to whether plaintiff relied on the representation, summary judgment is not proper for the plaintiff.

Defendants argue that their motion for summary judgment should be granted on this claim because they are not merchants under A.R.S. § 47–2104 (the Uniform Commercial Code). Plaintiff responds that as a matter of law there is no "merchant" requirement under the Consumer Fraud Act. Although the Act, be-

cause the statement of its purpose as set forth the Arizona courts, appears to require merchant-consumer transactions, there is no requirement in the statute that there be a merchant, only that merchandise be involved. *See* A.R.S. § 44–1522(A) (1987). The definition of merchandise includes real estate. A.R.S. § 44–1521(5) (1987). Thus, summary judgment is not proper for the defendants based on their claim that they are not merchants. Nor is summary judgment proper for the plaintiff on this claim (count 6) as there is a genuine issue of material fact as to whether plaintiff relied on the misrepresentation.

### III. IS PLAINTIFF ENTITLED TO SUMMARY JUDGMENT ON COUNT TWO—FAILURE OF CONSIDERATION BASED ON THE WRITTEN CONTRACT AND COUNT THREE—RESCISSION OF THE CONTRACT?

Plaintiff argues that he is entitled to summary judgment on count two because the partnership and investment were void for lack of consideration.

The agreement expressly sets forth the consideration as the plaintiff agreed to invest $230,000 in exchange for a return of that money and ⅓ of the proceeds of the sale above the amount invested by defendants. Clearly, consideration exists on the face of the contract. To the extent that plaintiff alleges that defendants failed to invest the money, that argument is relevant to the breach of contract claim. Therefore, summary judgment is proper for the defendants on this claim.

Because plaintiff is not entitled to summary judgment on either the consumer fraud and failure of consideration claims, summary judgment is not proper for plaintiff on the failure of consideration claim (claim three).

### IV. IS SUMMARY JUDGMENT PROPER FOR THE PLAINTIFF OR DEFENDANTS ON COUNT FIVE—FRAUD IN THE FORMATION OF THE PARTNERSHIP?

Plaintiff argues that the undisputed facts establish that: (1) the defendants asserted in writing that they had invested $306,250 into the property and that defen-

dant Neils later represented to plaintiff that he had personally invested $150,000 in the real estate; (2) defendants knew that their joint investment equaled only $185,-000; (3) defendants knew that the representation was material to plaintiff's decision to enter the partnership and invest the money; (4) defendants intended plaintiff to rely on the written misrepresentation as the money was required to prevent foreclosure of the real estate; (5) plaintiff had no knowledge of the falsehood until October of 1989, approximately three years later; and (6) plaintiff relief on the written representation to his detriment by losing his investment when foreclosure occurred in January of 1990.

Pursuant to Arizona law, fraud in the inducement of a contract requires:

(1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) his intent that it should be acted upon by the person and in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) his reliance on its truth; (8) his right to rely thereon; (9) his consequent and proximate injury.

*Carrel v. Lux,* 101 Ariz. 430, 434, 420 P.2d 564, 568 (1966).

█ In this case, the parties have established that a genuine issue of material fact exists as to whether plaintiff had knowledge of the misrepresentation at the time of or shortly after he entered the contract. Defendants state that they gave plaintiff all the relevant documents at the time they entered the contract and that these documents showed the defendants' investment in the property. DSOF 15. Plaintiff states that he did not receive these documents until October of 1989. *Id.* Thus, a genuine issue of material fact exists and summary judgment is not proper for the plaintiff or defendants on this claim.

## V.  SHOULD SUMMARY JUDGMENT BE GRANTED FOR DEFENDANTS ON THE CONVERSION (COUNT SEVEN) AND QUIET TITLE (COUNT TWELVE) CLAIMS?

Plaintiff alleges that "defendant Wright obtained the release of two acres of parcel A and had those two acres deeded to him personally in derogation of plaintiff's rights." See paras. 58–59 & 84–86 of Complaint. Defendant Wright alleges that plaintiff cannot produce any evidence to support these claims. In fact, the undisputed facts show that plaintiff and defendants jointly own the property in one-third shares. SOF 20 & 27. Plaintiff admits receiving a deed for his one-third share of the property and responds that he is agreeable to the court ruling that the parties jointly own a one-third interest in these two acres of property. Therefore, because the parties agree that they own the two acres in equal one-third interests, summary judgment is proper for defendant Wright on these two claims.

## VI.  IS SUMMARY JUDGMENT PROPER FOR DEFENDANT WRIGHT ON THE PROFESSIONAL NEGLIGENCE AND NEGLIGENT MISREPRESENTATION CLAIM (COUNT 10)?

Defendant Wright argues that he is entitled to summary judgment on this claim because there is no cause of action based on ER 1.8(A). *See* Rule 42, Rules of Supreme Court.

The undisputed facts establish that defendant Wright never represented plaintiff in the real estate transaction SOF 34, nor did he perform legal services for Canyon Properties SOF 32 or Merit Homes SOF 31 or defendant Neils SOF 33. Thus, plaintiff cannot state a claim of professional negligence or negligent misrepresentation and summary judgment is proper for the defendant on claim ten.

## VII.  SHOULD SUMMARY JUDGMENT BE GRANTED FOR PLAINTIFF OR DEFENDANTS ON COUNT 11—THE ARIZONA RICO VIOLATIONS?

Plaintiff argues that summary judgment is proper on the RICO claims because the undisputed facts establish that: (1) the de-

fendants devised a plan to defraud plaintiff into entering into a partnership agreement and investing $230,000 into the property by misrepresenting that their investment in the property was $306,250; (2) the purpose of the plan was to induce plaintiff to invest in the property; (3) both defendants knew the purpose of the plan and obtained a benefit from its execution in the nature of avoiding foreclosure of the property; and (4) the defendants perpetrated the plan through an affirmative misrepresentation that they had jointly invested $306,250 at the time the agreement was executed.

Defendants respond and move for summary judgment on this claim arguing that there is no evidence that any plan or scheme to defraud existed, rather, the evidence shows that plaintiff received a one-third ownership interest in exchange for his $230,000 investment. Further, defendants respond, that plaintiff admits that he invested the money to hide his assets.

The Arizona Racketeering Act, A.R.S. § 13–2301 et seq., "provides broad protection and civil remedies against racketeering injuries." *State ex rel. Corbin v. Hovatter*, 144 Ariz. 430, 698 P.2d 225 (App.1985). A.R.S. § 13–2314(A) provides for a civil cause of action for injury sustained due to racketeering:

A person who sustains injury to his person, business or property by racketeering as defined by § 13–2301, subsection D, paragraph 4 or by a violation of § 13–2312 may file an action in superior court for the recovery of treble damages and the costs of the suit, including reasonable attorney's fees ...

A.R.S. § 13–2314(A) (1989).

■ To establish a violation under § 13–2314(A), the plaintiff must show that he suffered damage or injury as the result of racketeering and that the act which caused the injury was performed for financial gain, was one of the illegal acts enumerated in the statute and was chargeable and punishable in accordance with the requirements of the statute. *State ex rel. Corbin v. Pickrell*, 136 Ariz. 589, 596–97, 667 P.2d 1304, 1311–12 (1983). Section

2301(D)(4) defines racketeering, relevant to this action, as:

[A]ny act, including any preparatory or completed offense, committed for financial gain, which is chargeable or indictable under the laws of the state in which the act occurred and ... punishable by imprisonment for more than one year, regardless of whether such act is charged or indicted, involving ...

\* \* \* \* \* \*

(p) False statements or publications concerning land for sale or lease or sale of subdivided lands or sale and mortgaging of unsubdivided lands.

(q) Resale of realty with intent to defraud

\* \* \* \* \* \*

(t) A scheme or artifice to defraud.

\* \* \* \* \* \*

A.R.S. § 2301(D)(4) (1989).

Section 13–2310, fraudulent schemes and artifices provides:

A. Any person who, pursuant to a scheme or artifice to defraud, knowingly obtains any benefit by means of false or fraudulent pretenses, representations, promises or material omissions is guilty of a class 2 felony.

B. Reliance on the part of any person shall not be a necessary element of the offense described in subsection A.

C. As used in this section, "scheme or artifice to defraud" includes a scheme or artifice to deprive a person of the intangible right of honest services.

A.R.S. § 13–2310 (1989).

"[I]t is only when the predicate act (whether it be gambling, sale of securities, fraud or any other of the enumerated acts) rises to the level of a serious criminal offense that the RICO statutes are applicable and allow a plaintiff the recovery of damages which are punitive in nature." *Pickrell*, 136 Ariz. at 596, 667 P.2d at 1311.

■ To establish a violation of § 13–2312, plaintiff must show that the injury was caused by the defendants' illegal control or conduct of an enterprise by or through racketeering:

A. A person commits illegal control of an enterprise if such person, through racketeering or its proceeds, acquires or maintains, by investment or otherwise, control of any enterprise.

B. A person commits illegally conducting an enterprise if such person is employed or associated with any enterprise and conducts or participates in the conduct of such enterprise's affairs through racketeering ...

A.R.S. § 13–2312 (1989); *State ex rel. Corbin v. Pickrell*, 136 Ariz. at 597, 667 P.2d at 1312.

In this case, because the undisputed facts establish that plaintiff received a valid one-third interest in the real estate in exchange for his investment, plaintiff cannot establish a scheme on behalf of the defendants to defraud the plaintiff. Thus, plaintiff cannot establish an element of his claim and summary judgment is proper for the defendants on this claim.

IT IS THEREFORE ORDERED THAT:

(1) Plaintiff's motion for summary judgment (DOC # 59) is denied.

(2) Defendants' motions for summary judgment (DOC # 54 & # 51) are granted in part and denied in part. Summary judgment is proper for the defendants on counts two, seven, eight, nine, ten, eleven and twelve of the amended complaint. Summary judgment is not proper for defendants on claims three, five and six because genuine issues of material fact preclude the grant of summary judgment. Summary judgment is not proper for defendants on claims one and four based solely on the fact that no partnership was created.